The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant.
3. Defendant was a qualified self-insurer.
4. Plaintiff's average weekly wage was $487.31, which generates a compensation rate of $324.86.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff, who is forty-seven years old, was employed by defendant in October 1993 as a staff specialist for academic programs. Plaintiff has worked for defendant for over twenty years.
2. As a staff specialist plaintiff spent ninety percent of her time inputting data at a computer. It would not be unusual for plaintiff to type for three hours straight.
3. After work on the evening of October 25, 1993 plaintiff experienced the onset of tingling and numbness in her right hand and arm. She went out of work on the 26th, but her condition worsened.
4. On October 28, 1993 plaintiff was seen by Dr. Kindell for complaints of pain in the right shoulder going down the right arm for the past three to four days. Plaintiff told Dr. Kindell she had experienced a brief episode of similar problems six months earlier. Exam was unremarkable and Dr. Kindell diagnosed arthritis.
5. On November 4, 1993 plaintiff came under the care of Dr. Way for continuing complaints of pain in the right upper extremity. On exam Dr. Way noted mild swelling and cool skin, which prompted Dr. Way to diagnose mild reflex sympathetic dystrophy (hereinafter referred to as RSD). Plaintiff continued to remain out of work on Dr. Way's recommendation.
6. On December 1, 1993 plaintiff was examined by Dr. Frazier. Plaintiff complained of pain and tingling, but on exam did not exhibit any swelling, atrophy or temperature changes, classic symptoms which are indicative of RSD. Dr. Frazier thought initially that plaintiff may have a mild RSD and some soft tissue pain, until she reviewed the results of x-rays of the cervical spine, which showed degenerative disk disease with neural foramen compromise at C5-6. Given that plaintiff's distribution of symptoms corresponded closely with the degenerative disease at the C5-6 level, and in the absence as of December 1, 1993 of swelling, atrophy and coolness, Dr. Frazier ultimately concluded plaintiff's right arm complaints were attributable to the degenerative changes in her neck and not to a RSD syndrome.
7. RSD is an abnormality in the sympathetic nerve system which takes many months to develop. The classic symptoms are atrophy, coolness and swelling must be present for many months to diagnose RSD. It is unlikely that RSD could cause atrophic changes in the short period of time between October 27, 1993 (the onset of plaintiff's problem) and November 4, 1993 (when Dr. Way diagnosed mild RSD). Furthermore, it is very unlikely that true atrophic changes could have resolved between November 4, 1993 and December 1, 1993 (when plaintiff saw Dr. Frazier).
8. Plaintiff began a graduated return to work with defendant on December 13, 1993.
9. Plaintiff's right upper extremity complaints and the six weeks of disability associated therewith were caused by the cervical degenerative disk disease.
10. The degenerative changes plaintiff has in her neck are not really uncommon for someone her age. They developed slowly over time. Plaintiff's employment with defendant was not a significant contributing factor to her development of degenerative disk disease at C5-6, nor did it place her at an increased risk of developing cervical disk disease as compared to members of the general public not so employed.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSION OF LAW
Plaintiff does not suffer from an occupational disease compensable under N.C. Gen. Stat. § 97-53(13) of the Workers' Compensation Act, inasmuch as her right upper extremity complaints were caused by cervical degenerative disk disease, a condition which is an ordinary disease of life to which the general public is equally exposed outside the employment and which was not proven to be due to causes and conditions which were characteristic of and peculiar to plaintiff's particular employment.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Plaintiff's claim is HEREBY DENIED.
2. Each side shall pay its own costs.
IT IS FURTHER ORDERED that this case be REMOVED from the Full Commission docket.
 S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _________________ J. RANDOLPH WARD COMMISSIONER
S/ _________________ BERNADINE BALLANCE COMMISSIONER
JHB/nwm 07/20/95